

FILED
MAILROOM

FEB 18 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____
                              )
                              )   No. 1:22-CV-184 LMB/TCB
                              )
        Plaintiffs,           )
                              )
    v.                        )   DEMAND FOR JURY TRIAL
                              )
        Defendant.            )
                              )   FILED IN CAMERA/UNDER SEAL
                              )   PURSUANT TO 31 U.S.C. § 3730
                              )
_____)

RELATOR'S ORIGINAL COMPLAINT



### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

UNITED STATES *ex rel.* R.S. KNIGHT,

              Plaintiffs,

v.

THE BOEING COMPANY,

              Defendant.

No. 1:22-CV-184 LMB/TCB

**DEMAND FOR JURY TRIAL**

**FILED IN CAMERA/
UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730**

### RELATOR'S ORIGINAL COMPLAINT

1.     R.S. Knight ("Relator") brings this action on behalf of the United States of America through the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("False Claims Act" or "FCA"). Relator seeks to recover all damages, penalties, and remedies available at law or in equity for Defendant's violations of federal law described herein.

### INTRODUCTION

2.     This is a *qui tam* action under the False Claims Act to recover damages, civil penalties, and other relief against Defendant The Boeing Company ("Boeing") for submitting, or causing the submission of, false claims to the United States Government (collectively, the "False Claims") in connection with procurement contracts. Specifically, where applicable, the Truth in Negotiations Act required Boeing to analyze the proposals of each of its subcontractors to ensure fair and reasonable pricing and to disclose the

2

analysis and/or results to the Government. For subcontracts that met certain size thresholds, Boeing was also required to ensure that the Government received all relevant cost and pricing data. Based on Relator's experience as a Boeing employee for twenty years, as well as Boeing's own internal data, Boeing withheld this critical information from the Government in hundreds of instances and settled subcontracts at prices in excess of its own price reasonableness determinations. As a result, between 2016 and the present, taxpayers have paid hundreds of millions of dollars for unreasonably and unfairly priced services and goods arising from Boeing's subcontracts.

3.      Overcharging on government contracts is the *sine qua non* of what the FCA was designed to prevent. *See United States ex rel. Springfield Term. Ry. v. Quinn.* 14 F.3d 645, 649 (D.C. Cir. 1994). Yet in 1992, the United States Government Accountability Office reported that over the five previous fiscal years, the United States lost $3.67 billion due in disproportionately large part to overpricing by contractors on government contracts. *See* U.S. Gen. Accounting Office, Report No. GAO/HR-93-8, Defense Contract Pricing 12 (Dec. 1992).

4.      Relator brings this action to stop Boeing's unlawful behavior, to require Boeing to reimburse taxpayers, to levy appropriate penalties, and to recover all other damages and relief to which the Government and he may be entitled under federal law.

## PARTIES

5.      Relator R.S. Knight is an individual citizen of the United States who resides in Alabama. Relator formerly served as a procurement pricing analyst for Boeing. In that role, Relator bore direct witness to conduct giving rise to this lawsuit. During the regular

3

course of his employment, Relator also had access to additional information—including years of pricing data and pricing analyses establishing that the Government paid, directly or indirectly, Boeing's subcontractors unreasonable prices—that supports the claims brought herein. Relator may be contacted through the undersigned attorneys.

6.      The United States of America (the "Government") is a plaintiff and real party in interest under the FCA. Pursuant to the *qui tam* provisions of the FCA, Relator seeks recovery on behalf of the Government for amounts paid by the United States Treasury and any other government programs as a result of False Claims submitted, or caused to be submitted, by Defendant, as well as all applicable enhancements and penalties. The Government may be contacted through the U.S. Attorney's Office for the Eastern District of Virginia.

7.      Defendant The Boeing Company is a Delaware corporation with its principal place of business in Chicago, Illinois. Boeing can be served with process through its designated agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

<u>**JURISDICTION AND VENUE**</u>

8.      This Court has original jurisdiction over the claims brought under the False Claims Act, 31 U.S.C. §§ 3279, *et seq.* and the *qui* tam provisions of 31 U.S.C. § 3730 therein, pursuant to 31 U.S.C. § 3732 and 28 U.S.C. §§ 1331 & 1345.

9.      This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because that section of the False Claims Act authorizes nationwide service of

process under the so-called National Contacts Test; and Boeing can be found, resides, or transacts business in this District.

10.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Boeing can be found, resides, or transacts business in this District.

11.     There are no known public disclosures of the allegations and transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730.

12.     A copy of this Complaint is being served upon the Attorney General of the United States and the U.S. Attorney's Office for this District. A privileged, written disclosure statement setting forth all material evidence and information Relator possesses has also been submitted as required by 31 U.S.C. § 3730(b)(2). *See* Fed. R. Civ. P. 4(d)(4).

13.     Relator is the original source of the information forming the basis of this action because he possesses direct and independent knowledge of the non-public information upon which the allegations herein are based. *See* 31 U.S.C. § 3730(e)(4)(B). Relator acquired non-public information that is independent from and materially adds to any publicly disclosed information relating to Defendant's violations of the False Claims Act.

14.     Relator has complied with all conditions precedent to bringing this action.

## LEGAL FRAMEWORK

### A. The False Claims Act

15.     The False Claims Act ("FCA") imposes liability to the United States upon any person that, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or "knowingly

makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B); or conspires to do the same, § 3729(a)(1)(C).

16.     "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate ignorance. *Id.* § 3729(b)(1). The FCA does not require proof of specific intent to defraud in order to establish a violation. *Id.*

17.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended, and 28 C.F.R. § 85.5, the per-false-claim penalty under the FCA is a minimum of $11,665 up to a maximum of $23,331. These penalties apply to conduct that occurred after November 2, 2015, where the penalty is assessed after June 19, 2020.

### B. The Truth-in-Negotiations Act

18.     The Truth-in-Negotiations Act ("TINA"), 10 U.S.C. § 2306a, and the Federal Acquisition Regulation ("FAR"), Part 15, require contractors, under certain circumstances, to provide cost or pricing data to government contracting officers and to certify that such cost or pricing data is "accurate, complete, and current." The FAR further requires that the contracting officer include TINA clauses in government contracts, thereby making compliance with TINA an express contract requirement. *See* FAR § 52-215-1 *et seq.*

19.     Under FAR § 15.404-3(b), "[t]he prime contractor or subcontractor shall (1) conduct appropriate cost or price analyses to establish the reasonableness of proposed subcontract prices; [and] (2) include the results of these analyses in the price proposal."

20.     The objective of cost or price analyses is "to ensure that the final agreed-to price is fair and reasonable." FAR § 15.404-1(a). Additionally, under paragraph (b)(3) of FAR § 15.404-3, "when required by paragraph (c) of this subsection, [the prime contract

6

or subcontractor shall] submit subcontractor certified cost or pricing data to the Government as part of [the contractor's] own certified cost or pricing data." Per paragraph (c), "[a]ny contractor or subcontractor that is required to submit certified cost or pricing data also shall obtain and analyze certified cost or pricing data before awarding any subcontract, purchase order, or modification expected to exceed the certified cost or pricing data threshold."  In those circumstances, "[t]he contractor shall submit, or cause to be submitted by the subcontractor[s], certified cost or pricing data to the Government for subcontracts that are the lower of either (i) $15 million or more; or (ii) [b]oth more than the pertinent certified cost or pricing data threshold and more than 10 percent of the prime contractor's proposed price, unless the contracting officer believes such submission is unnecessary." FAR § 15.404-3(c)(1)(i)-(ii).

21.   FAR § 2.101 defines "cost or pricing data" as

all facts that, as of the date of price agreement, or, if applicable, an earlier date agreed upon between the parties that is as close as practicable to the date of agreement on price, prudent buyers and sellers would reasonably expect to affect price negotiations significantly. Cost or pricing data are factual, not judgmental; and are verifiable. While they do not indicate the accuracy of the prospective contractor's judgment about estimated future costs or projections, they do include the data forming the basis for that judgment. Cost or pricing data are more than historical accounting data; they are all the facts that can be reasonably expected to contribute to the soundness of estimates of future costs and to the validity of determinations of costs already incurred. They also include, but are not limited to, such factors as (1) vendor quotations; (2) nonrecurring costs; (3) information on changes in production methods and in production or purchasing volume; (4) data supporting projections of business prospects and objectives and related operations costs; (5) unit-cost trends such as those associated with labor efficiency; (6) make-or-buy decisions; (7) estimated resources to attain business goals; and (8) information on management decisions that could have a significant bearing on costs.

22.    "When certified cost or pricing data are required," as in FAR § 15-404-3(c), "the contracting officer shall require the contractor or prospective contractor to submit to the contracting officer (and to have any subcontractor or prospective subcontractor submit to the prime contractor or appropriate subcontractor tier) the following in support of any proposal:

> (1) The certified cost or pricing data and data other than certified cost or pricing data required by the contracting officer to determine that the price is fair and reasonable; and
>
> (2) A Certificate of Current Cost or Pricing Data . . . certifying that to the best of [the contractor's] knowledge and belief, the cost or pricing data were accurate, complete, and current as of the date of agreement on price, or, if applicable, an earlier date agreed upon between the parties that is as close as practicable to the date of agreement on price.

*Id.* § 15.403-4(b)(1)-(2).

23.    TINA provides for a reduction in the contract price if it is found that the contractor's cost or pricing data was not accurate, complete, and current at the time of the negotiations. *See id.* § 15-407-1(e)-(f).

## JOINT AND SEVERAL LIABILITY

24.    A Government prime contractor is liable for a contract price reduction under TINA and its implementing clauses contained in the prime contract with the Government, even if that contractor reasonably relied on false data furnished by its subcontractor, who was also bound by similar TINA clauses. *See Lockheed Georgia Co. Div. v. United States*, 193 Ct. Cl. 86, 94-96 (Ct. Cl. 1970). The rationale for such joint and several liability is that the prime contractor "must bear the responsibility, at least as far as the Government is concerned, for the overstatement of costs." *Id.*

8

## FACTUAL ALLEGATIONS

25.     Relator worked at Boeing for over twenty years and recently retired in April 2021. During his tenure with the company, he worked as a procurement pricing analyst in the Procurement Financial Analysis group, the group responsible for undertaking the cost and price analyses required by TINA. Relator's (and other pricing analysts') principal function was to create Cost Analysis Reports that determined whether Boeing's subcontractors were proposing prices that were fair and reasonable to Boeing and the Government.

26.     In creating the Cost Analysis Reports, Relator and other procurement financial analysts used information from the subcontractors, independent research, and a technical evaluation in order to determine price reasonableness.

27.     The technical evaluations were typically performed by engineering groups. Those evaluations often included (1) an examination of the types and quantities of labor hours and labor mix; (2) an examination of the types and quantities of material; and (3) an examination of the types and quantities of other direct costs.

28.     The Cost Analysis Reports contained an analyzed price—*i.e.*, the price that Boeing's experts determined was fair and reasonable for the subcontract. TINA required Boeing to disclose that analyzed price in every situation where a contract implicated the statute. In addition, the Cost Analysis Report itself was comprised of cost and pricing data that TINA required Boeing to disclose and certify whenever the subcontract met the aforementioned size thresholds.

29.     After completing and preparing Cost Analysis Reports, procurement pricing analysts like Relator would provide Boeing's procurement personnel the reports for purposes of negotiation and disclosure to the Government contracting officer.

30.     During his employment, Relator obtained inferential—but substantial—evidence that Boeing was frequently withholding the true and correct results of Cost Analysis Reports (and the cost and pricing data underlying those reports) from the Government during procurement negotiations, regardless of the Government agency involved.

31.     Indeed, Boeing data in Relator's possession shows that since 2016, Boeing settled on subcontractor prices that were $502,736,369 in excess of what Boeing determined was fair and reasonable. In other words, Boeing has in its possession data establishing that it agreed to more than $500 million in unreasonable and unfair costs under Government contracts.   As just one example, the below subset of the data isolates subcontracts with (1) greater than $15 million value and (2) a variance of greater than 10% between Boeing's analyzed fair and reasonable price and the amount that it ultimately agreed to pay the subcontractor (*i.e.*, the settlement amount).[1]

| An Compl Date | Prime Contract # | PC # | Final Analysis $ | Settlement $ | Neg End Date | Analysis Percentage (ProCost) | Variance amounts |
|---|---|---|---|---|---|---|---|
| 1/16/20 |  | 19MS030 | $29,996,162 | $47,828,956 | 3/23/20 | -59% | $17,832,794 |
| 7/27/18 | FA8625-16-C-6599-PD EMD | 1650556 | $27,894,897 | $42,791,861 | 5/7/20 | -53% | $14,896,964 |
| 5/27/20 |  | xxxxxx | $13,843,718 | $20,801,001 | 6/16/20 | -50% | $6,957,283 |

[1] Boeing's data shows that there are also several subcontracts with a value "more than the pertinent certified cost or pricing data threshold and more than 10% of the prime contractor's proposed price." FAR § 15.404-3(c)(1)(ii).

10

| Date | Contract | Number | Value 1 | Value 2 | Date | % | Value 3 |
|---|---|---|---|---|---|---|---|
| 7/27/18 | FA8625-16-C-6599 | 1650556 | $56,172,813 | $75,208,139 | 5/7/20 | -34% | $19,035,326 |
| 5/1/16 | FA-8625-11-C-6600 | tbd | $17,633,218 | $23,156,486 | 2/19/19 | -31% | $5,523,268 |
| 12/16/19 | | | $19,259,019 | $24,506,240 | 7/15/20 | -27% | $5,247,221 |
| 11/1/18 | W58RGZ-14-C-0018 | 1690261 & 1690263 | $27,774,769 | $35,150,152 | 4/17/19 | -27% | $7,375,383 |
| 4/17/19 | W58RGZ-15-R-0131 | 1729393 | $13,754,631 | $17,295,412 | 5/2/19 | -26% | $3,540,781 |
| 4/15/20 | SPPRA1-14-D-002U | 1688643 | $32,992,953 | $41,002,052 | 8/31/20 | -24% | $8,009,099 |
| 10/3/19 | N00019-14-C-0067 | 1930890 | $22,897,371 | $28,324,930 | 5/6/20 | -24% | $5,427,559 |
| 8/31/16 | HQ147-12-C-0004 | | $22,685,579 | $27,700,000 | 10/22/19 | -22% | $5,014,421 |
| 8/5/19 | 41-222 TRN001 | 1828166 | $44,169,737 | $53,680,848 | 9/20/19 | -22% | $9,511,111 |
| 6/15/20 | 80MSFC20C0052 | 1977639 | $25,106,613 | $30,510,459 | 8/28/20 | -22% | $5,403,846 |
| 12/15/20 | W58RGZ-16-C-0023 | | $12,768,257 | $15,513,275 | 3/29/21 | -21% | $2,745,018 |
| 9/29/17 | | | $39,536,960 | $46,731,304 | 1/11/18 | -18% | $7,194,344 |
| 7/11/18 | | 1606218 | $33,409,669 | $39,363,022 | 10/2/18 | -18% | $5,953,353 |
| 4/20/16 | | 1580488 | $18,869,318 | $22,212,152 | 4/17/19 | -18% | $3,342,834 |
| 9/18/19 | | 1838332 | $18,910,089 | $22,210,975 | 12/9/19 | -17% | $3,300,886 |
| 12/21/18 | | 1542314 | $25,633,713 | $30,038,000 | 7/31/19 | -17% | $4,404,827 |
| 1/4/17 | | 527956 | $22,740,116 | $26,636,000 | 6/1/17 | -17% | $3,895,884 |
| 4/11/19 | W91215-16-G-001 | 1004549 | $16,283,604 | $19,072,925 | 8/8/19 | -17% | $2,789,321 |
| 5/21/19 | FA8202-18-R-1001 | 1497048 | $26,749,706 | $31,254,802 | 10/22/19 | -17% | $4,505,096 |
| 8/23/18 | FA8634-18-C-2701 | 1631912 & 1631921 | $15,054,560 | $17,574,000 | 10/8/18 | -17% | $2,519,440 |
| 9/13/18 | | | $77,596,049 | $89,442,227 | 4/2/19 | -15% | $11,846,178 |
| 7/21/17 | FA8672-16-D-0010 | 1331705 | $24,917,536 | $28,590,760 | 7/27/18 | -15% | $3,673,224 |
| 2/22/18 | SPRPA1-14-D-002U | 1532579 | $47,414,626 | $54,000,000 | 6/29/18 | -14% | $6,585,374 |
| 6/4/20 | | UCA | $27,381,744 | $30,865,700 | 11/3/20 | -13% | $3,483,956 |
| 10/16/19 | FA3002-13-D-0012 | TBD | $53,806,123 | $60,597,764 | 2/7/20 | -13% | $6,791,641 |

Case 1:22-cv-00184-LMB-IDD   Document 1   Filed 02/18/22   Page 12 of 16 PageID# 12

| 9/11/17 | N00019-14-C-0067 | TBD | $14,960,529 | $16,800,000 | 9/10/18 | -12% | $1,839,471 |
| 4/25/19 | | | $21,569,628 | $23,927,628 | 7/14/20 | -11% | $2,358,000 |
| 4/11/17 | N00019-14-C-0067 | | $34,265,353 | $37,891,896 | 8/1/17 | -11% | $3,626,543 |
| TOTAL | | | | | | | $194,629,906 |

32.    In fact, for subcontracts in excess of $15 million, Boeing settled at a price $1 million or more than its analyzed price 76 times at a price of $327.9 million more than what Boeing determined to be fair and reasonable.

33.    In addition to Boeing's own data, Relator had several conversations with other procurement price analysts where they expressed concern that both (1) the results of the Cost Analysis Reports and (2) the underlying cost and pricing data being withheld from the Government during negotiations—in direct violation of Boeing's obligations under TINA. Relator's concerns were multiplied when Boeing employees from the procurement department asked price analysts, including Relator, to approve or concur, after the fact, with settled prices in excess of their analyzed fair and reasonable price. In these situations, there were no new facts that justified an increase to the price the analyst had initially determined was fair and reasonable. Relator personally experienced this conduct approximately six times. He refused to change his original analyses.

34.    In addition, Relator had conversations with colleagues in his department who similarly expressed concerns that Boeing was settling at prices with its subcontractors that exceeded Boeing's internal analyses of what was fair and reasonable.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### Violations of the False Claims Act: False Claims for Payment
#### 31 U.S.C. § 3729(a)(1)(A)

35.     Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

36.     A contractor violates the FCA when it knowingly submits false or fraudulent cost or pricing information to the Government. *See United States ex rel. Campbell v. Lockheed Martin Corp.*, 282 F. Supp. 2d 1324 (M.D. Fla. 2003).

37.     Through the acts and omissions alleged above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the Government for payment or approval within the meaning of 31 U.S.C. § 3729(a)(1)(A). These claims were false or fraudulent because Boeing concealed material facts during negotiations, which resulted in inflated contract prices.

38.     Each claim submitted as a result of the Boeing's illegal conduct represents a false claim.

39.     The United States, unaware of their falsity, paid and may continue to pay claims that would not be paid but for Defendant's unlawful conduct.

40.     Defendant's conduct described herein was knowing, as that term is used in the False Claims Act, and material as that term is defined in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

41.     By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

## SECOND CLAIM FOR RELIEF

### Violations of the False Claims Act:  Use of False Statements
### 31 U.S.C. § 3729(a)(1)(B)

42.     Relator realleges and reincorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

43.     Boeing knowingly used, or caused to be made or used, false records or statements that were material to false or fraudulent claims for payment submitted to the Government. Those false records or statements used or caused to be used by Boeing include false or improper claims.

44.     Boeing's conduct described herein was knowing, as that term is used in the False Claims Act, and material, as that term is defined in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

45.     The United States, unaware of the falsity of the records and statements made by, used, or caused to be used by Boeing, approved, paid, participated in, and may continue to approve, pay, or participate in, payments made by the Government for claims that would otherwise not have been approved and paid.

46.     By reason of these false records or statements, the United States has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

14

## PRAYER FOR RELIEF

**WHEREFORE,** Relator respectfully prays for judgment against Boeing as follows:

a.     Treble damages and all applicable civil penalties in the maximum amount allowed by law;

b.     All attorney's fees, expenses, and costs associated with prosecuting this civil action;

c.     Pre- and post-judgment interest on all amounts owed to the United States and/or Relator at the highest amounts allowed by law;

d.     Preliminary and permanent injunctive relief against the illegal conduct; and

e.     All other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Relator demands a jury trial for all claims and issues so triable.

February 17, 2022                    Respectfully submitted,

                                     REESE MARKETOS LLP


                                     By: */s/ Joshua M. Russ*
                                         Joshua M. Russ (*pro hac* pending)
                                         Texas Bar No. 24074990
                                         josh.russ@rm-firm.com
                                         Andrew O. Wirmani (*pro hac* pending)
                                         Texas Bar No. 24052287
                                         andrew.wirmani@rm-firm.com
                                         Allison N. Cook (*pro hac* pending)
                                         Texas Bar No. 24091695
                                         allison.cook@rm-firm.com
                                         750 N. Saint Paul St., Ste. 600
                                         Dallas, Texas 75201-3201
                                         Telephone: (214) 382-9810
                                         Facsimile: (214) 501-0731


                                     SUROVELL ISAACS LEVY PLC


                                     By: */s/ Nathan D. Rozsa, Esq.*
                                         Nathan D. Rozsa, Esq., VSB # 77268
                                         Scott A. Surovell, Esq., VSB # 40278
                                         4010 University Drive, Second Floor
                                         Fairfax, Virginia 22030
                                         Telephone: (703) 251-5400
                                         Facsimile: (703) 591-2149
                                         nrozsa@surovellfirm.com
                                         ssurovell@surovellfirm.com
                                         Local Counsel for Plaintiff


                                     ATTORNEYS FOR RELATOR